**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **Albertine Thompson, as Parent and** | : | **CIVIL ACTION** |
| **Legal Guardian of Marc Eldemire, and** | : | |
| **Aislinn McQueen, as Parent and** | : | |
| **Legal Guardian of Anthony and** | : | |
| **NaJame McQueen,** | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **Stephen Mancuso, Robert Donnelly, and** | : | |
| **Zachary Kuzowsky,** | : | |
| **Defendants.** | : | **NO.  08-3638** |

# MEMORANDUM AND OPINION

L. FELIPE RESTREPO                                           AUGUST 25, 2009
UNITED STATES MAGISTRATE JUDGE

Before the Court is the Motion *in limine* and supporting Memorandum of Law of

Defendants, Stephen Mancuso, Robert Donnelly, and Zachary Kuzowsky, seeking to preclude the

admission of any evidence or argument concerning prior Internal Affairs Division ("IAD")

investigations or other police misconduct on their part (Doc. No. 18), and the Memorandum of

Law in response thereto of Plaintiffs Albertine Thompson (as parent and guardian of Plaintiff

Marc Eldemire) and Aislinn McQueen (as parent and guardian of Plaintiffs Anthony and NaJame

McQueen) (Doc. No. 22).  Also before the Court is a second Motion *in limine* and supporting

Memorandum of Law filed by Defendants seeking to preclude the admission of evidence or

argument relating to a videotape broadcast on the FOX 29 television channel (Doc. No. 25) and

Plaintiffs' Memorandum of Law in response thereto (Doc. No. 26).[1]  For the reasons set forth

below, Defendants' Motions *in limine* are granted without prejudice to Plaintiffs to raise these

issues at trial should appropriate circumstances arise.  Plaintiffs are permitted to question

Defendants about any prior dishonest acts should they testify at trial, but extrinsic evidence of

such acts are not admissible.


# I. BACKGROUND

Plaintiffs filed suit on August 4, 2008 alleging violations of their Fourth and Fourteenth

Amendment rights under 42 U.S.C. §1983 based on the theory that the Defendant police officers

used excessive force during the arrest of Eldemire and NaJame and Anthony McQueen.  See

Compl. ¶ 37.  The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  On May

12, 2009, the Honorable Ronald L. Buckwalter signed an order referring the case to this Court

after the parties consented to proceed in front of the undersigned pursuant to 28 U.S.C. § 636(c)

and Federal Rule of Civil Procedure 73.  See Consent and Order dated 5/12/09 (Doc. No. 11).

This lawsuit arises from an altercation that occurred on March 14, 2008 between Marc

Eldemire, NaJame McQueen, and Anthony McQueen and Officers Stephen Mancuso, Robert

Donnelly, and Zachary Kuzowsky.  Pl.'s Br. 2; Def.'s Br. 1.  Plaintiffs allege that they were

walking on the 100 block of Godfrey Avenue in Philadelphia after leaving a basketball game at

the Olney Recreation Center located at A Street and Olney Avenue.  Pl.'s Br. 2.  They entered the

---

[1]To avoid confusion, the Memoranda of Law submitted in connection with Defendants'
Motion *in limine* seeking to preclude evidence of any prior IAD investigations or police
misconduct will hereinafter be cited as "Def.'s Mem." and "Pl.'s Mem.," and the Memoranda of
Law submitted in connection with Defendants' Motion *in limine* concerning the FOX 29
videotape will hereinafter be cited as "Def.'s Br." and "Pl.'s Br."

Chinatown Restaurant to purchase food and were stopped by Kuzowsky and warned to leave the area.  Id.  As Plaintiffs began to leave the scene, Kuzowsky allegedly "struck [P]laintiff Eldemire in the leg with his police vehicle."  Id.  Kuzowsky then got out of his police cruiser and began assaulting NaJame McQueen.  Id.  At some point during the Kuzowsky-NaJame McQueen altercation, Donnelly and Mancuso arrived.  Id. at 3.

Donnelly arrested Anthony McQueen and allegedly assaulted him in the course of doing so.  Id.  Mancuso, who was Donnelly's partner, arrested Eldemire and allegedly assaulted him during the course of the arrest.  Id.  NaJame McQueen was also arrested.  Id.  All three Plaintiffs were charged with Aggravated Assault, Simple Assault, Recklessly Endangering Another Person, Resisting Arrest, Criminal Conspiracy, and Disorderly Conduct.  Id.  Anthony McQueen and Eldemire were taken to Albert Einstein Medical Center for treatment of their injuries.  Id.  On July 25, 2008, the criminal charges against all three Plaintiffs were dismissed by the Philadelphia Court of Common Pleas.  Id.

Not surprisingly, Defendants' account of the events that took place on March 14, 2008 are different.  Defendants allege that they received a radio call about a fight on the highway, and after arriving on scene, noticed approximately fifteen teenagers.  Def.'s Br. 1.  Kuzowsky utilized the police cruiser's horn to ask the teenagers to disperse.  Id.  Only about ten of the teenagers responded, so Kuzowsky told those who remained to "keep it moving."  Id.  All three Plaintiffs allegedly "refused to disperse and were subsequently involved in a physical altercation with Defendant, Officer Kuzowsky."  Id.

3

### A. IAD INVESTIGATIONS AND OTHER POLICE MISCONDUCT

Defendants do not make clear in their Motion which IAD records or prior instances of misconduct they seek to preclude.  Def.'s Mem. 1-3.  In response, Plaintiffs note that Donnelly has "been the subject of other excessive force claims both before and after the subject incident, the latest a shooting and killing of a suspect."  Pl.'s Mem. 5-6.  Plaintiffs also mention police records from the Rockledge Police Department in Bucks County which involve an off-duty arrest effectuated by Mancuso and Kuzowsky at the Rockledge Pub where they accused the suspect of assault.  Id. at 6.  Plaintiffs allege that the arrestee accused Mancuso and Kuzowsky of assaulting him during the course of the off-duty arrest.  Id.  According to Plaintiffs, Mancuso claims that IAD never investigated the Rockledge Pub incident and that he received a commendation for his conduct at the Pub.  Id.  This incident took place on February 28, 2008, two weeks before the events giving rise to the complaint in this case.  Id.

### B. THE FOX 29 VIDEOTAPE

At issue in Defendants second Motion *in limine* is a videotape from the FOX 29 television channel "of an incident occurring on May 5, 2008 depicting three men being pulled from a vehicle and beaten by several police officers."  Pl.'s Br. 1.  One of those police officers was Donnelly, who was later terminated from his employment with the Philadelphia Police Department.  Id.  Plaintiffs allege that Donnelly was terminated from his employment "only 8 months after graduating from the Police Academy and serving as a probationary officer" because he was found to have used excessive force on the suspect at issue in the FOX 29 videotape.  Id. at 3-4.  It appears from Plaintiffs' Memorandum in connection with the IAD Motion *in limine* that

4

they also plan to introduce a memorandum signed by Donnelly's direct supervisor and Police Commissioner Ramsey rejecting his promotion from probationary officer to police officer.  Pl.'s Mem. 12.

The pertinent issue at trial will undoubtedly be whether the force utilized by Defendants was reasonable.  See Graham v. Connor, 490 U.S. 386, 395 (1989).  Indeed, on June 2, 2009, Plaintiffs stipulated to the dismissal of their claim of municipal liability against the City of Philadelphia which was brought pursuant to Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).  See Stipulation dated 6/2/09 (Doc. No. 20).  As such, the Court must determine whether the evidence at issue is admissible for purposes of proving the excessive force claims against the individual Defendants.

## II. DISCUSSION

Defendants argue that any IAD investigations, prior police misconduct, and the FOX 29 videotape are inadmissible under Federal Rules of Evidence 404(b) and 403.  See Def.'s Mem. 2 (citing Huddleston v. United States, 485 U.S. 681, 685 (1988) (citing Fed. R. Evid. 404(b))); see also Def.'s Br. 2 (citations omitted).  Defendants note that "courts consistently hold that in a § 1983 action alleging police misconduct, plaintiff may not introduce evidence that the defendant police officer allegedly engaged in other acts of misconduct."  Def.'s Mem. 2; Def.'s Br. 2-3 (citing Ricketts v. City of Hartford, 74 F.3d 1397, 1414-15 (2d Cir. 1996)) (additional citations omitted).  Plaintiffs respond that the evidence in question is admissible pursuant to Rules 404(b) and 608(b)(2).  Pl.'s Mem. 6-13; Pl.'s Br. 5-7 (citations omitted).

## A. RULE 404(b)

In a civil case, "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." Fed. R. Evid. 404(a). However, Rule 404(b) provides in pertinent part that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

Fed. R. Evid. 404(b). The four-prong test enunciated by the Third Circuit to determine the admissibility of Rule 404(b) evidence provides as follows:

> (1) the evidence must have a proper purpose under Rule 404(b); (2) it must be relevant under Rule 402; (3) its probative value must outweigh its prejudicial effect under Rule 403; and (4) the [district] court must charge the jury to consider the evidence only for the limited purpose for which it was admitted.

Becker v. ARCO Chem. Co., 207 F.3d 176, 189 (3d Cir. 2000) (alteration in original and internal quotation marks omitted) (citing J&R Ice Cream Corp. v. California Smoothie Licensing Corp., 31 F.3d 1259, 1268 (3d Cir. 1994)) (additional citations omitted). The Third Circuit has further explained that even where evidence is relevant and fits a proper Rule 404(b) purpose, "the proponent must clearly articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the crime charged." Becker, 207 F.3d at 191 (quoting United States v. Morley, 199 F.3d 129, 133 (3d Cir. 1999)) (additional citations omitted).

6

### 1. COMMON PLAN OR MODUS OPERANDI

Plaintiffs argue that the Rockledge Pub incident is admissible under Rule 404(b) to establish Defendants' scheme or plan because Defendants "knew that the existence of an injury by the arrestee would prompt an investigation into whether the officer's actions violated policy and procedure and/or the constitutional rights of the individual." Pl.'s Mem. 7. Essentially, Plaintiffs argue that the Defendant Officers have a plan or modus operandi to "'create' reasonableness under the Graham standard when none exist--a showing crucial to the issue in this case." Id. at 8. Plaintiffs allege that these officers effectuate this plan by fabricating assaults on themselves by arrestees in order to make their own use of unconstitutional force appear reasonable. Id. at 9.

With respect to the admission of prior bad acts to prove "plan," the Third Circuit has explained that:

> Ordinarily, when courts speak of 'common plan or scheme,' they are referring to a situation in which the charged and the uncharged [acts] are parts of a single series of events. In this context, evidence that the defendant was involved in the uncharged [act] may tend to show a motive for the charged [act] and hence establish the commission of the [act], the identity of the actor, or his intention.

Becker, 207 F.3d at 196 (quoting J&R Ice Cream, 31 F.3d at 1268-69) (alterations in original); see J&R Ice Cream, 31 F.3d at 1268-69 (quoting Government of the Virgin Islands v. Pinney, 967 F.2d 912, 916 (3d Cir. 1992)) (additional citations omitted). The existence of a "similar purpose or motivation--a common goal" is essential to establish the "logical relevance of the prior act to the fact in issue, i.e., [Defendants'] commission of the subsequent act." Becker, 207 F.3d at 197.

"[A] common plan or scheme may consist of incidents [that] were sufficiently similar to earmark them as the handiwork of the same actor, and thus constitute signature evidence of identity." Becker, 207 F.3d at 197 (quoting J&R Ice Cream, 31 F.3d at 1269) (additional citations omitted). The Third Circuit has explained that "this method of proving identity through the use of [Rule 404(b) evidence] is sometimes labeled proof of modus operandi and distinguished from the use of a common plan or scheme to prove identity." Becker, 207 F.3d at 197-98 (quoting J&R Ice Cream, 31 F.3d at 1269 n. 9) (alteration in original). Modus operandi evidence is most commonly introduced in criminal cases "where there is a question as to the identity of the perpetrator of the crime." Becker, 207 F.3d at 198 (citations omitted).

Becker was an employment discrimination case where the plaintiff alleged age discrimination and sought to introduce evidence of the facts underlying the employer's termination of another co-worker. Id. at 184. The plaintiff sought to introduce this evidence based on the theory that it helped prove the defendant employer's "'intent' in terminating plaintiff and 'plan' of fabricating reasons for terminating older employees under Rule 404(b)." Id. at 186. The Third Circuit noted that the evidence was not admissible to establish the employer's modus operandi because "identity was not a disputed issue in [the] case, and it [could not] be argued successfully that the similarities between the two events show[ed] a unique or distinctive modus operandi." Id. at 199. Consequently, the Third Circuit found the appropriate inquiry to be whether the prior termination of the plaintiff's co-worker was admissible to prove the defendant employer's plan. Id. at 200.

The Third Circuit held that the evidence surrounding the co-worker's termination was inadmissible as evidence of the defendant's plan because "there was no evidence presented that

the two terminations were connected, mutually dependent, or part of any larger goal of [defendant's]." Id. at 197 (citation omitted).  The evidence was not introduced to show that the defendant employer had a "large-scale plan to eliminate its older employees and create a younger workforce." Id.  Furthermore, the Third Circuit reasoned that "it [was] rather obvious that the two terminations [were] unrelated in the sense that one had nothing to do with the other, except for the fact that, allegedly, [defendant] facilitated both by fabricating legitimate reasons to support the adverse employment actions." Id.  The final factor supporting a finding of inadmissibility was the fact that the two terminations occurred three years apart.  Id.

The Third Circuit further reasoned that:

> the district court admitted the . . . evidence to establish a contested material fact based only on the similarity of the prior event to a subsequent, unrelated occurrence which was alleged to have happened in [plaintiff's] case.  Here, the district court admitted the . . . evidence on the theory that it was more likely that [defendant] fabricated its purported nondiscriminatory reasons for terminating [plaintiff] if [defendant's] management had a pattern or practice of inventing performance problems in order to faciliate the termination of other employees.

Id. at 202.  It was also noted that the "district court admitted the . . . evidence because, in its view, the evidence mirrored [plaintiff's] version of the events leading up to his discharge, thus tending to corroborate [plaintiff's] theory of his case." Id. (citation omitted).  This evidence was offered to prove that because the defendant had behaved in that manner once, "it was likely that it did it again," and "this type of inference is precisely the kind prohibited by Rule 404(b)." Id. at 203 (quoting Pinney, 967 F.2d at 917).

In this case, the Rockledge Pub and FOX 29 incidents are not admissible to prove the Defendants' modus operandi because the identity of the actors is not at issue and the facts

9

underlying all three incidents are not sufficiently similar to show that the Defendants acted pursuant to any unique or distinct modus operandi.  See Becker, 207 F.3d at 199; see also Rosser v. Liciardello, 2005 U.S. Dist. LEXIS 33749, at *1, *20-21 (E.D. Pa. Dec. 14, 2005) (finding that other instances of police misconduct where defendant officers allegedly wrongfully arrested plaintiffs were inadmissible, partly because of the factual dissimilarity between the incidents). The facts surrounding the off-duty arrest outside a bar, the highly-publicized FOX 29 videotape, and the arrest at issue in this case are only similar to the extent that they involved some of the same officers, excessive force was allegedly used, and that Defendants allegedly arrested the civilians to cover up their own use of excessive force.  On these facts, the Court cannot find that the Defendants operated under any unique or distinct modus operandi.

Moreover, while the Rockledge Pub and FOX 29 incidents happened in close temporal proximity to the actions that allegedly took place in this case, the Court finds that these prior bad acts are inadmissible as evidence of Defendants' "plan" pursuant to Rule 404(b).  Plaintiffs have offered no evidence that the three occasions where Defendants allegedly used excessive force were connected or dependent upon each other so as to show that there was a common goal or scheme.  The only relation between the three incidents is that Defendants allegedly assaulted a civilian and then arrested the civilian for assault to cover up their own misconduct.  The one major distinction from Becker is that in this case, the three incidents involve the same police officers, whereas the two incidents in Becker involved different supervisory employees.  See Becker, 207 F.3d at 200.

Despite this distinction, there simply have not been enough facts alleged which would allow the jury to logically tie the three events together as part of some larger scheme of

misconduct.  As a result, the Court finds that this evidence is being offered by Plaintiffs to prove

that because Defendants have allegedly arrested individuals in an effort to cover up their own

brutality in the past, they are more likely to have behaved in that manner in this case.  This is, as

the Third Circuit has explained, the very type of inference that is impermissible under Rule

404(b).  Becker, 207 F.3d at 203 (quoting Pinney, 967 F.2d at 917).  Consequently, Plaintiffs

may not introduce evidence of the Rockledge Pub incident or the FOX 29 videotape as evidence

of Defendants' plan or modus operandi.


### 2. INTENT

It appears that Plaintiffs wish to introduce the FOX 29 videotape and related evidence to

show that Donnelly was later terminated from his employment with the Philadelphia Police

Department.  Pl.'s Br. 5.  Plaintiffs argue that this evidence is probative of Donnelly's intent or

his knowledge or plan to assault citizens and then arrest them to cover up his own use of

unreasonable force.  Id. at 5-6.  Plaintiffs claim that they are not offering this evidence to prove

that Donnelly has a propensity for violence.  Id. at 6.

Excessive force cases are analyzed under the Fourth Amendment's "'reasonableness'

standard."  Graham, 490 U.S. at 395.  "[T]he question is whether the officers' actions are

'objectively reasonable' in light of the facts and circumstances confronting them, without regard

to their underlying intent or motivation."  Id. at 397 (citations omitted); see also Estate of Smith

v. Marasco, 318 F.3d 497, 515 (3d Cir. 2003).  Indeed, "[a]n officer's evil intentions will not

make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an

officer's good intentions make an objectively unreasonable use of force constitutional."  Graham,

490 U.S. at 397 (citations omitted).

      The Supreme Court of the United States has explained that "in assessing the credibility of an officer's account of the circumstances that prompted the use of force, a factfinder may consider, along with other factors, evidence that the officer may have harbored ill[]will toward the citizen."  Graham, 490 U.S. at 399 n. 12 (citing Scott v. United States, 436 U.S. 128, 139 n. 13 (1978)); see also Ricketts, 74 F.3d at 1412 (citation omitted).  Furthermore, evidence of intent is admissible where a plaintiff seeks to recover punitive damages.  Ricketts, 74 F.3d at 1412 (citing Smith v. Wade, 461 U.S. 30, 56 (1983)) (additional citations omitted); Buchanan v. W. Whiteland Twp., 2008 U.S. Dist. LEXIS 106149, at *25-26 (E.D. Pa. Jan. 7, 2009) (quoting Davis ex rel. Davis v. Borough of Norristown, 400 F. Supp. 2d 790, 801 (E.D. Pa. 2005)) ("in a § 1983 claim against individual defendants, a jury may assess punitive damages if the defendant's conduct is shown to be motivated by an evil motive or intent, or when it involves reckless or callous indifference to constitutionally protected rights.").  Plaintiffs are seeking punitive damages in this case.  Compl. ¶ 50 b.  However, Plaintiffs have not offered any proof that Defendants had a tumultuous history with Plaintiffs nor that they were previously acquainted with them on any level.  There is also no evidence which would indicate that Defendants harbored specific ill will towards Plaintiffs for any other reason.  As a result, the Court finds that the intent of the officers will have limited relevance in this case.

      In Whichard v. Baylor, 2004 U.S. Dist. LEXIS 12619 (E.D. Pa. July 1, 2004), the plaintiff alleged that prison guards assaulted him and sought to introduce evidence of a "Summary Report Regarding the Use of Force" pertaining to a similar incident between the defendant prison guards and another inmate.  Id. at *3.  The plaintiff argued that the evidence was admissible under Rule

404(b) because it showed the defendants "intended to act 'maliciously and sadistically for the

very purpose of causing harm.'" Id. at *5 (quoting Eng v. Scully, 146 F.R.D. 74, 80 (S.D.N.Y.

1993)).  The court mentioned Carson v. Polley, 689 F.2d 562, 572-74 (5th Cir. 1982), where the

Fifth Circuit upheld "the admission of a performance evaluation stating that a prison guard

needed to 'work on controlling temper and personal feelings' because he tended to get 'into

arguments with inmates' and let 'his temper flare up too quickly.'" Whichard, 2004 U.S. Dist.

LEXIS 12619, at *5 (citing Carson, 689 F.2d at 572-74) (additional citations omitted).

Nevertheless, the court noted that even if evidence of the prison guards' prior misconduct

was admissible to prove their intent, "the danger of unfair prejudice outweigh[ed] any probative

weight it would have."  Whichard, 2004 U.S. Dist. LEXIS 12619, at *6.  Under the

circumstances, the district court found that "[t]he risk [was] too high that the jury, regardless of

how well instructed, would conclude that, because these officers had used improper force on a

prisoner before, they were more likely to have done so [there]."  Id.  Other courts have reached

similar conclusions.  See, e.g., West v. City of Philadelphia, 1988 U.S. Dist. LEXIS 1990, at *6-7

(E.D. Pa. Feb. 26, 1988) (finding evidence of a police officer's disciplinary record which

contained evidence of one off-duty incident concerning violence towards another officer and an

"unsubstantiated complaint [of brutality] by an arrestee of which [the officer] was exonerated"

inadmissible to prove intent in an excessive force case); Wallace v. Hano, 1992 U.S. Dist. LEXIS

13388, at *1, *18-19 (S.D.N.Y. Sept. 3, 1992) (citations omitted) (finding evidence of prior

misconduct by a "Parks Enforcement Patrol Officer" inadmissible to prove intent in an excessive

force and false arrest case because it was "*de facto* character evidence"); Tanberg v. Sholtis, 401

F.3d 1151, 1167-68 (10th Cir. 2005) (finding an officer's prior uses of excessive force or false

13

arrests were inadmissible to prove the officer intended to use excessive force against the plaintiff because intent is not relevant to whether the force used was reasonable under <u>Graham</u>); <u>Franklin v. Messmer</u>, 111 Fed. Appx. 386, 388 (6th Cir. 2004) (same).

This Court finds that even if the evidence of Defendants' prior misconduct is admissible to prove their intent in this case, the prejudice that would result from its introduction substantially outweighs any probative value it might have.[2]  <u>See Becker</u>, 207 F.3d at 189 (citations omitted) (explaining that Rule 404(b) evidence must also satisfy the requirements of Rule 403).  Here, there is limited probative value to the introduction of the evidence because intent is not a central issue in deciding whether the force used by Defendants was reasonable. Further, as noted above, there is no evidence that the Defendants entered into the encounter harboring ill will towards Plaintiffs.  With respect to Donnelly, Plaintiffs have merely asserted that he was terminated from employment for misconduct unrelated to the force allegedly used in this case, which proves nothing about any personal malice he may have manifested toward Plaintiffs.  With respect to the Rockledge Pub incident that Mancuso and Kuzowsky were allegedly involved in, that incident apparently did not ripen into an IAD investigation; indeed, the relevant facts stemming therefrom have been gleaned from the unsubstantiated reports of excessive force contained in the Rockledge Police Department's records.  Pl.'s Mem. 6.  As such, evidence of that occurrence lacks sufficient indicia of reliability for admissibility in this matter. <u>See West</u>, 1988 U.S. Dist. LEXIS 1990, at *6-7.

There is a substantial risk that the jury would view all the aforementioned evidence of

---

[2]The prejudice to Defendants that would result from introducing the FOX 29 videotape weighs **much** more heavily than its probative value in light of the highly-publicized nature of the video and the repercussions that have resulted therefrom.

prior misconduct as "did it once, did it again" evidence, precluding its admission under Rule 404(b).  See Whichard, 2004 U.S. Dist. LEXIS 12619, at *6 (citations omitted).  In Whichard, the district court granted the officer's motion to exclude the prior misconduct "subject to reconsideration should Defendants proceed at trial in a manner that would change the prejudice-probity balance."  Id.  This Court agrees with the approach taken in Whichard.  The Court cannot predict precisely what evidence will be adduced nor can it "predict how Defendants will defend at trial."  Id.  As a result, the Court will reconsider this issue should the appropriate circumstances arise.

## B.  RULE 608(b)

Plaintiffs also contend they should be permitted to introduce evidence that Defendants falsified documents and omitted material information from police reports under Rule 608(b). Pl.'s Mem. 12-13.  Plaintiffs contend that "[e]xtrinsic evidence of such acts as complained of in this case . . . are not permitted unless the object of such testimony--the person who committed such acts--denies doing so while being questioned.  Id. at 13 (citing Fed. R. Evid. 608(b)(2)).  As such, Plaintiffs argue that "[a]llegations by the individuals that the defendants unreasonably used force on them without justification by falsifying and/or omitting such information through both documents and testimony, should be left to the fact finder to decide and given the appropriate weight as determined by the Court."  Pl.'s Mem. 13.

As the Third Circuit explained:

> "Under Rule 608(b), specific instances of conduct of a witness, other than conviction for a crime, may not be proved at trial through extrinsic evidence for the purpose of attacking the witness's character

15

> for truthfulness.  The court may at its discretion permit questioning
> about specific instances of conduct on cross-examination, but only if
> the conduct is probative of the witness's character for truthfulness or
> untruthfulness. Fed. R. Evid. 608(b).  Under Rule 403, evidence may
> be excluded, even if relevant, where "its probative value is
> substantially outweighed by the danger of unfair prejudice, confusion
> of the issues, or misleading the jury, or by considerations of undue
> delay, waste of time, or needless presentation of cumulative
> evidence."

United States v. Williams, 464 F.3d 443, 448 (3d Cir. 2006).  Where the witness denies engaging

in such dishonest conduct, the party is stuck with the witness's answer.  United States v. Davis,

183 F.3d 231, 257 n. 12 (3d Cir. 1999).  In other words, "counsel should not be permitted to

circumvent the no-extrinsic-evidence provision [in Rule 608(b)(1)] by tucking a third person's

opinion about prior acts into a question asked of the witness who denied that act."  Id. (alteration

in original) (quoting Stephen A. Saltzburg, Impeaching the Witness: Prior Bad Acts and

Extrinsic Evidence, 7 CRIM. JUST. 28, 31 (Winter 1993)).

     "Allowing such a line of questioning not only puts hearsay statements before the jury, it

injects the views of a third person into the case to contradict the witness."  Davis, 183 F.3d at 257

n. 12.  There is a risk that allowing extrinsic evidence would result in a "mini-trial regarding a

tangential issue of dubious probative value that is laden with potential undue prejudice."  Id.

Under this reasoning, the Third Circuit held in Davis that the government could question a New

York City Transit Police officer about "misappropriating departmental gasoline for personal use

and putting a false name in a gas log, and . . . lying to an Internal Affairs officer about ripping up

an individual's subway pass."  Id.  The government could **not** question the defendant about the

underlying reports, the defendant officer's suspension, or the ultimate determination made by

Internal Affairs that he "lied about the subway-pass incident," even if the defendant denied such

16

acts on cross-examination.  Id.

Consequently, Plaintiffs' argument that extrinsic evidence of Defendants' dishonest acts

is admissible under Rule 608(b)(2) if the officers deny such acts on cross-examination must fail.[3]

To the extent that Plaintiffs wish to question Defendants about past conduct on cross-

examination to attack the officers' character for truthfulness, such questioning will be permitted.

See Fed. R. Evid. 608(b)(1).  However, extrinsic evidence of these dishonest acts is not

admissible, even if Defendants deny engaging in the misconduct.  See Rule 608(b); Davis, 183

F.3d at 257 n. 12.  Other courts have reached the same result in civil rights cases.  See Mullins v.

City of Philadelphia, 2007 U.S. Dist. LEXIS 16114, at *2, *15-17 (E.D. Pa. Mar. 6, 2007)

(holding that plaintiff was not entitled to attack a Deputy Sheriff's character for truthfulness by

presenting testimony of three former inmates who claimed defendant assaulted them and then

falsely accused them of assault); Bartz, 2009 U.S. Dist. LEXIS 65650, at *2, *6-10 (finding that

counsel could question the police officer about false statements made in police reports and

internal police documents, but extrinsic evidence of the "discipline and termination that resulted"

therefrom was inadmissible).  As such, Plaintiffs may not question Donnelly about the

memorandum and termination that resulted from his prior misconduct.  See Davis, 183 F.3d at

---

[3]Rule 608(b)(2) allows counsel to question a witness "concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified."  Fed. R. Evid. 608(b)(2).  The Federal Rules of Evidence specifically contemplate the presentation of character witnesses **in a criminal case** to prove pertinent traits of the accused and the alleged victim.  See Fed. R. Evid. 404(a)(1), 404(a)(2), and 405(a).  No such character witnesses will be presented in this civil case, nor is this a case where character evidence is admissible because a person's character "is an essential element of a charge, claim, or defense."  Kennedy v. Lankenau Hosp. Jefferson Health Sys., 2000 U.S. Dist. LEXIS 13826, at *16 (E.D. Pa. Sept. 12, 2000) (quoting Fed. R. Evid. 405); see also Crowley v. Cooperstein, 1996 U.S. Dist. LEXIS 13311, at *4-5 (E.D. Pa. Sept. 10, 1996) (quoting Fed. R. Evid. 405(b)).  Therefore, Rule 608(b)(2) is inapplicable.

257 n. 12 (reports regarding officer misconduct, the discipline itself, and an internal affairs

determination were inadmissible extrinsic evidence under Rule 608(b)).

### III. Conclusion

The Court finds that Defendants' prior acts of police misconduct which Plaintiffs seek to

introduce do not fit any proper Rule 404(b) purpose and are therefore inadmissible.  However,

depending on the evidence adduced at trial, the Court is willing to revisit this issue should facts

come to light which might alter the Court's prejudice-probity balancing test.  To the extent

counsel seeks to cross-examine Defendants about prior acts probative of their truthfulness, such

questioning is permissible.  Plaintiffs will not be permitted to introduce extrinsic evidence of

Defendants' prior dishonest acts even if Defendants deny those acts during cross-examination.

An appropriate order will be set forth separately.